Good morning. May it please the court. My name is Jeffrey Hoffman. I'm the director at the University of Houston Immigration Clinic. I'm pro bono counsel for Mr. Silva Vega, petitioner. Your honors, there are four main issues. I've tried to distill the main issues in this case from the brief. I know the brief raises a lot of issues. The first issue is whether the government waived their right to bring a rebuttal argument of the fundamental change in circumstances, since they never brought it before the remand. They never brought it before the immigration judge. They never brought it on appeal to the board before the remand, and they never mentioned it in their motion to remand. Number two, even assuming arguendo, even if the court were to find, which we do not believe is the case, but even if the court were to find that they did not waive that rebuttal argument, the fundamental change in circumstances in Nicaragua, the next question is whether they met, by a preponderance of the evidence, their burden that there was a fundamental change. And we will submit, we will argue, that in fact there was a fundamental change, but it was in our client's favor. The third issue is whether or not the I.J. and the B.I.A. violated the doctrine of apparent eligibility by never advising a convention against torture relief until the very, very end of proceedings. And last But what's the prejudice with respect to that? Yes, Your Honor. The prejudice is this. Mr. Silva-Vega was a pro se. This is very important to emphasize. He was a pro se litigant. He, if you read closely, which I reread over the year, he had no idea about what, how to make an asylum plan. What's the difference between withholding of deportation and convention against torture? Most immigration attorneys don't know the differences. They're very fine distinctions, and in fact, the case law, the case law mandates that they're analytically distinct. That's the words of the cases. So how are they distinct? Let me, let me address Your Honor's question. The duty to advise the petitioner of all available relief, what it would have done is it would have put him on notice that he had a convention against torture claim. Pursuant to 8 CFR 1208.16, with respect to a CAC claim, convention against torture claim, it's a different analysis. The I.J. must consider past torture. And the government in this case has conceded on remand that there was past persecution. So the judge would have had to consider the past torture. The judge would have had to consider evidence of gross human rights violations. It's right there in the regulation. 1208.16 says the judge must consider that. The judge, of course, never considered that because he never considered the CAC claim. Is there a difference between past persecution and past torture? Yes, Your Honor, there is a difference. But we've made the argument in the brief, and I think it's our position, that he was subjected to torture. But that is correct. There is a difference. The point is that under 1208.16, and again, limited to this issue of the CAC relief, 1208.16 says consider past torture inflicted. Our argument is he showed that. Evidence of gross human rights violations in the country. The evidence, even the evidence submitted by government counsel shows that. And number three, any other country conditions. This is part of the mandate that the regulation provide with respect to CAC relief. None of that was considered. I'd like to turn now to the waiver argument. Let's talk about the waiver argument. It seems like what you're saying is the government must always raise the issue of changed country conditions, even though it's not relevant at the time. Yes, Your Honor, that's a fair question. That's not our position. Here's our position. It has to be your position. Tell me how it's not your position. Yes, Your Honor. ACFR 1208, I apologize for all the regulatory, but it's immigration law. ACFR 1208.13, if Your Honors will look at 1208.13b1l2, talks about the burden of proof. Okay? What it says is that the burden of proof operates as follows. Once the applicant, quote, unquote, has demonstrated past persecution, then the burden shifts. It doesn't say, okay, once there's a finding that has been made. It doesn't say once there's been a ruling that's been made. It doesn't say once that there's been substantial evidence that's been shown. It says once he's demonstrated, has demonstrated. Our position is he demonstrated. But the BIA didn't think he demonstrated it then. The I.J. didn't think he demonstrated it then. But you're saying that the government nonetheless should have ignored what the BIA and the I.J. said and just gone ahead and said, you know what, in abundance of caution, because there's been a lot of evidence of this, we're going to go ahead and take the time to do country reports and present evidence on changed country conditions. I understand your point. It's not an abundance of caution issue. It's a burden. Here's the point. On remand, the government asked for a remand on past persecution and nexus. They got it. This Court granted the remand, went back. They didn't argue past persecution. They then conceded. They say to the Board, we concede past persecution. He was subject to past persecution. Well, if he was subject to past persecution, then he necessarily showed that all along ab initio. But wouldn't the Court, this Court, have sent it back, if they hadn't have done it, for the BIA to examine that question in the first instance? Wouldn't they have had to do that? So why would we go ahead and do, make, require the government to do it at the stage that you're asking us to consider doing it, instead of waiting until it's really relevant, because the BIA is going to have to look at it in the first instance anyway? The point I'm making is that the DHS counsel, the government's counsel, made a mistake in this case. I've done a lot of asylum trials, and I've seen a lot of different litigators on the part of the Department of Homeland Security. They're very good. They're very good litigators. In this case, you have a litigator from the Department of Homeland Security up against a pro se litigant. In all the ones that I've done, virtually all the ones that I've been involved with, they always raise fundamental change in circumstances, and they always raise internal relocation, because that's their burden. If it's found either at that point, if he's demonstrated, the respondent has demonstrated past persecution, or later on it gets remanded from the Ninth Circuit and the board finds past persecution, he obviously showed that because he didn't testify in front of the board. He testified back in 2009 in front of the immigration judge. They've conceded. That's the problem. They've conceded past persecution. And so by doing so, the burden then must have shifted back in 2009. That trial attorney, she didn't, if you look at the record, she didn't even make a statement, a closing argument. She never even mentioned the words, there's never a mention of fundamental change in country conditions or fundamental change circumstances at any point in time before the immigration judge, before the BIA, and at the motion to remand stage. They could have mentioned that, and they should have, but they didn't. So you would say, or would you say the government had waived the argument if it had raised the arm before the BIA on the first go-around? I'm sorry, Your Honor? Would you say that the government had waived the argument if it had raised country conditions before the BIA on the first time around? That's correct, because our position is they waived it when he demonstrated. It's the regulation, 1208.13b1l2 says when he has demonstrated past persecution, it's their duty at that point. So technically, that's absolutely correct. They waived it because they didn't raise it in the first instance. But nobody knew that he had demonstrated it. So how is it fair, what you're saying, how is it fair to say they have to do this when nobody has the slightest idea that he's made this verdict? Your Honor, that's a fair question. I think that it's, first of all, it's clear from the record, if you read the record, that he has demonstrated it. It's clear from, as this Court stated or intimated when the motion to remand was granted, that there's plenty of circuit court precedent saying that when somebody deserts from military conscription because of conscientious objection, that's what he did. He didn't want to continue to be a part of the Sandinistas standing guard and watching people be tortured. And he did that on 30 separate occasions, and he didn't want to do it. So he ran away four times. And he testified to this. And this Court has held in several precedent decisions that that constitutes past persecution. So that was a mistake. The DHS counsel made a mistake because this, the Ninth Circuit, he's in the Ninth Circuit, right? The Ninth Circuit precedents mean that he has shown past persecution. Boom, 2009, he showed past persecution. And that's our position. Now, let me address one more thing. Well, did your client object to the introduction of the country report? He did not. He didn't. I would submit, Your Honor, he didn't even understand the question because the I.J. said, and I remember reading it, the I.J. said, do you have any objection to any of these documents? Oh, no, no, no, I don't. I don't think he understood anything about what was going on. And that also underscores the problem with the pro se nature of this issue. Let me address, so my time is running out, I want to address the second issue that I raised, which is let's assume, let's assume for the sake of argument that this Court says, well, you know, they didn't waive it, they can bring fundamental change, you know, on remand. Take a really, really good look at the record, Your Honors, because if you look at the record, remember that the duty is preponderance of the evidence. They have to show by preponderance of the evidence that a fundamental change in circumstance existed. I re-read the record, the whole record, last week. Page 507 of the Certified Administrative Record, which is what the government submitted, they submitted a ton of documents, says it admits, page 507 of the Administrative Record, admits Sandinistas have been able to mistreat and even to kill their enemies with great impunity, with great impunity. It directs the adjudicator to explore features of the applicant that would prompt mistreatment. Page 510 of the Certified Administrative Record, it says whether Sandinistas would punish a defector depends on, A, if he held a sensitive position. Our client held a sensitive position. He was guarding people who were being tortured. B, the assessment of the damage done, and C, the defector's importance. Page 511, the claims of returnees depend if they are likely to be perceived as a threat to the Sandinista regime. For example, in the example they give in this country report is that they try to reclaim property. Our client would be perceived as a threat to the Sandinista regime because he's witnessed 30 times torture, terrible torture, Your Honor, people with their fingernails being pulled out, people with being threatened in front of their children, people being shot. Page 548, and this is actually very telling. Page 548. In 2006, according to the government's evidence, the U.S. ambassadors to Nicaragua said, Ortega is a tiger that does not change his stripes. U.S. officials fearful of Daniel Ortega. Well, wait a minute. I thought the government's position was that Ortega was elected by free and fair elections. I thought that Daniel Ortega was running on reconciliation. Well, that's not what the U.S. officials said in 2006, according to their own evidence. Page 549, Daniel Ortega is compared to Adolf Hitler and to a hoodlum by U.S. officials. Page 554, American officials stated Ortega has not changed, despite embracing Catholicism and efforts to recast himself as a proponent of reconciliation. So I submit to Your Honors that the government has not met their preponderance of the evidence. Does the danger to your claim ever expire? Does it just go on as long as Ortega is there? No, Your Honor, because asylum, the way asylum works, is it works as long as the regime that's in place, the governmental threat, exists. Now, I submit that, as I said earlier, there was a fundamental change. That's true. There's a fundamental change in 2006 and 2007, January 2007, when Daniel Ortega became the president. My client, I can tell you, is very, very afraid to go back, because he remembers the seven years he was carried off from his home and conscripted into the Sandinista military. He remembers who his boss was, and his boss was Daniel Ortega. Well, what about his brothers? His brothers were similar or seemed to be similarly situated for purpose of evaluating this change in country conditions, and they've been living in Nicaragua for a while. It's a very fair point. He addressed that. His brothers, according to him, never were in the sensitive position. Again, from the country report and the instructions given by the government in that DOS, Department of State country report, it says look at the sensitive position that he had. He had a sensitive position. He testified, and as you read in the record, they were in ancillary positions. I forget what it was, logistics, supply, whatever it was. He was in reconnaissance. He was sent in to bombard these villages and then to stand guard around the villages so that nobody could escape. That's what he did. If that's not a sensitive position, I don't know what is. I see I only have one minute remaining. I'll reserve. You may reserve, Counsel. We'll hear from the government. Good morning. May it please the Court, my name is Dawn Conrad, and I'm here today on behalf of the United States Attorney General. In this case, substantial evidence supports the Board's decision that a fundamental change in circumstances in Nicaragua since Petitioner's persecution in the 1980s rebutted the presumption that Petitioner has a well-founded fear of persecution. Petitioner's fear of future persecution is completely subjective, as there is no evidence in the record that the current Sandinista government in Nicaragua or any individual in Nicaragua seeks to harm Petitioner since he deserted the Sandinista army over 20 years ago. Would you respond to Professor Hoffman's point about the burden of proof, the shifting burden of proof? Yes. You mean the waiver argument? Yes. Okay. In this case, we had an initial PFR before this Court. It was remanded. Initially, the IJ and the Board found that there was no past persecution. It was remanded, and on a remand, as Petitioner's Counsel points out, DHS conceded that there had been past persecution. At that point, the procedural posture of the case changed, and for the first time, DHS was required to address under the regulation whether there had been a fundamental change. Okay. So you agree with him up to that point? Yes. Now, what's your response? But I would not agree that DHS was required to raise that argument prior to remand. He's pointing to regulation that says that you are required. What's your response to that? No. The regulation says where the past persecution has been demonstrated, DHS must address whether it can rebut that past persecution, either by showing a fundamental change of circumstances. And in this case, the past persecution had not been – there had been no finding of past persecution. And so that's where you all have your point of contention, I guess, is that what – how do we define demonstrated? Is that right? I mean, because you say demonstrated doesn't mean that there – doesn't kick in until there's a finding by BIA or an IJ or something like that. That's correct. And I guess he – the professor is claiming that it just is demonstrated as if, I guess – A kind of a subjective thing that is all parties should assume that that's possibly there before there's an actual finding would be my guess of his position. But in this case, there was no finding of past persecution. And the board has held in matter of Miguel Lima-Solosa that the judicial rules of waiver do not apply to DHS on remand when it was the prevailing party and where DHS was not required to raise an argument in its first round of proceedings. And in the basis – if you look at the waiver cases that Petitioner cites in his brief before this court, they are waiver cases from this court dealing with briefing, you know, Petitioner's opening brief, response brief. This is not the same type of situation. Those waiver rules are to protect a party from not having the opportunity to respond to an argument raised for the first time. Here, both parties did extensive briefing before the board on whether DHS could meet its fundamental change of circumstances. And what cases have said that the government does not waive its fundamental change of argument in these circumstances when the burden is on the government to disprove eligibility for relief? I'm not aware of any cases that address that particularly. We would just rely on the regulation that says it's not required to address it until there has been a finding of past persecution. And then also, matter of Miguel Lima-Solosa was not an asylum claim, but it was a ground of admissibility claim that the government did not have to raise until remand. To return to the underlying claim in this case, there is no evidence that Petitioner has any current threat of persecution in Nicaragua. Actually, after Petitioner finally deserted the Army in 1989, he continued to live and work in Nicaragua for five years without being harmed. The immigration judge found that he left the United States in 1994 to seek a better life. And he did not even file an asylum application until January 2009 when he first learned that the Sandinistas had returned to power in January 2007. And then I'd also like to ---- the fact that six of his brothers had been in the Sandinista Army and are living without incident right now. Yes, Your Honor. I think we would argue that that supports the government's position in this case that Petitioner has not shown a threat of persecution. But you heard his response to Judge Murguia's question, and that is that they were in a different kind of role. Is that relevant? It can be. In this case, I believe there were, I don't know if it was six, several Petitioner's brothers. The IJ found that they deserted multiple times, as well as Petitioner. And the board in this case found that if there hadn't been a change of country conditions in Nicaragua, just the fact that Petitioner's brothers had not been persecuted and that Petitioner lived in Nicaragua for five years would not have alone supported a fundamental change of circumstances. But it's that in conjunction with the fact that the government has changed in Nicaragua, there has been a general amnesty granted to deserters of the Sandinista Army, and there's no evidence that that general amnesty has been revoked and that the current Sandinista Army, I mean the current Sandinista government, targets former deserters. How about the inconsistencies that were highlighted by the professor regarding the Daniel Ortega and the conflicts apparently within the report from the government, from our government? Well, I believe he's citing the 1997 country conditions report, which I believe he argued in his opening brief should not have even been considered by the board because it was outdated. But those aren't, I wouldn't say those are inconsistencies with Petitioner's claim. Petitioner is still not showing that the Sandinista government of today targets former deserters of over 20 years ago. There's no evidence of that. In fact, the most recent country report that's in the record, the 2000, which I believe is the 2008 country report, says that there's been no incidents of violence against people returning from civil war or self-exile. So the reference to him being like Hitler, we should not take much stock in that? Well, I don't know what that is in reference to. It may be to a press article. I don't think that was in the country report. And this court usually gives deference to the country reports as being the best evidence of country conditions. And also Petitioner has not shown that his claim is based on political opinion or that he's going to be targeted because he's an active political person. Let me ask you about another point raised. I don't think it was really discussed here yet. But can the BIA rely on facts, for example, when evaluating this possible change in country circumstances that the IJ did not explicitly note or find? Yes. In this case, what the BIA looked at documents that were already in the record. There was no new evidence submitted on remand. And in matter of ASB, which was a similar case before the board, the board said that the end of the war was an uncontested event. The board can look at country facts that were already in the evidence before the agency. And the BIA retains independent judgment and discretion regarding pure questions of law and the application of a particular standard of law to those facts. And in this case, we would argue that a fundamental change of circumstances is applying a standard of law to the facts in the record. And just to address briefly, I believe Petitioner raised his due process claim regarding his Convention Against Torture claim. We would note that in the administrative record at page, I think it was administrative record page 349, which was before the petitioner started testifying, the IJ did inform him of the requirements for approving withholding of removal and withholding of removal under the Convention Against Torture. And Petitioner has not shown any prejudice by showing that there was any kind of testimony or something he was prevented from presenting that would have shown his eligibility for Convention Against Torture. I'm sorry, one last question on waiver, because it seems to be that's the primary sort of thrust here from Petitioner in terms of the arguments and issues presented. And I guess I just wanted to ask, I mean, the Court often does strew waiver strictly and generally that harms the petitioner in a way that doesn't benefit the petitioner. I mean, why shouldn't we hold the government to the same standard here? Because at this point, it's not the same procedural framework as what we have in briefing before this Court. And what we have in this case was there was a remand, and in the remand order, the Court said that the parties could submit supplemental briefs before the board. And both parties argued in their supplemental briefs about fundamental change of circumstances. So there's no application of the waiver rules of this Court in that one party doesn't have a chance to respond. Both parties fully got to raise the argument on whether the record shows a fundamental change of circumstances. And the board was not required to address it prior to the first petition for review in this Court, because there was no – I mean, I'm sorry, DHS was not required to address it, because there was no finding of past persecution. The DHS argued there was no well-founded fear. Petitioner had not met his burden to show a well-founded fear, and that was what the DHS was required to do at that point. Thank you. We respectfully ask the Court to deny the petition for you. Thank you. Thank you, counsel. Mr. Hoffman, you have less than a minute. I'll be very, very brief. First of all, Lemus Losa. Lemus Losa I have in front of me is a case that involved a matter on which the applicant, the alien, had the burden of proof. Completely distinguishable. As the regulation stated, as I think the government would concede, the government has the burden. The government has the burden to prove by preponderance of the evidence fundamental change. This case is not applicable. ASB, matter of ASB, another case that they heavily rely on. That case has been abrogated by the Third Circuit. Wang versus INS. So that case cannot be relied on. Another point is that he went back after he deserted, he lived in Managua. He testified. He explained that. He moved around. He was threatened by neighborhood committees. As Judge O'Scanlan noted, three of his brothers are not similarly situated. He addressed that. Even though he was pro se and even though he did not have sophistication and didn't understand English, he still was able to explain why they were treated differently. And the last point I'll make is that if the burden is not placed on the government in this case, if the burden is not placed on the government, then the government will be held to a different standard than the alien. This is a symmetrical requirement. The waiver rules, I did a search. I did a search on Westlaw in the Ninth Circuit. 383 times this circuit has applied waiver against the alien, at least 383 decisions against the alien. And so under the Accardi Doctrine, it must be applied. The board and the agency is bound by the same rules. Thank you, counsel. The case just argued will be submitted for decision.
judges: Adelman, O'scannlain, Murguia